**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PROGRESSIVE NORTHERN INSURANCE COMPANY | ) ) ) **Case Number:** |
| Plaintiff, | ) ) **Judge:** |
| v. | ) ) **Magistrate Judge:** |
| COREY EQUIPMENT, INC. COYOTE LOGISTICS, LLC, T&S TRUCKING.COM, INC., and | ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES the above-named Plaintiff, Progressive Northern Insurance Company ("Progressive"), by and through its counsel, McCOY LEAVITT LASKEY LLC, and as and for its Complaint for Declaratory Judgment, alleges and shows to the Court as follows:

**INTRODUCTION**

1. This is a declaratory judgment action brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), to obtain a declaration of Progressive's rights and responsibilities under a policy of insurance issued by Progressive to Corey Equipment, Inc. ("Corey"). Specifically, Progressive seeks a declaration that it owes no duty to defend or indemnify Corey against the claims asserted by Coyote Logistics, LLC ("Coyote") in an underlying lawsuit filed in the U.S. District Court for the Northern District of Illinois (Case No. 1:22-cv-00398) (the "Underlying Lawsuit").

1

## THE PARTIES

2. Progressive is a duly licensed insurance company incorporated in the State of Wisconsin and has its statutory home office in Madison, Wisconsin, making it a citizen of Wisconsin pursuant to 28 U.S.C. § 1332(c)(1).

3. According to the allegations of the Complaint in the Underlying Lawsuit, Defendant Coyote is a federally licensed property freight broker, operating as a limited liability company under the laws of Delaware and with principal places of business located in Chicago, Illinois and Atlanta, Georgia. Coyote's sole member is alleged to be a citizen of the State of Delaware. Accordingly, Coyote is a citizen of the States of Illinois and Delaware for purposes of 28 U.S.C. § 1332(c)(1).

4. Defendant Corey is a Maine corporation with principal place of business located in Monticello, Maine, making it a citizen of Maine pursuant to 28 U.S.C. 1332(c)(1).

5. According to the allegations of the Complaint in the Underlying Lawsuit, Defendant T&S Trucking.com, Inc. ("T&S") is a Massachusetts corporation with its principal place of business in Lakeville, Massachusetts, making it a citizen of Massachusetts pursuant to 28 U.S.C. § 1332(c)(1).

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1441(a) because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of costs and interest.

7. Venue is proper under 28 U.S.C. § 1391(b)(3) because Defendant Coyote is subject to the court's personal jurisdiction in the Northern District of Illinois, where Coyote's United States headquarters is located.

8. Venue is also proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Northern District of Illinois, including Coyote's filing of the Underlying Lawsuit in this district, which involves claims against a putative insured of Progressive within the geographical boundaries of the Northern District of Illinois.

## FACTUAL BACKGROUND

*The Trailer Fire and Underlying Lawsuit*

9. On or about February 2, 2021, Coyote tendered to Corey a shipment of chemicals (the "Shipment") for transportation in interstate commerce from The Chemours FC LLC ("Chemours") c/o Sardo Newark Warehouse in Newark, Delaware to Saint Gobain in Merrimack, New Hampshire pursuant to a Broker-Carrier agreement between Coyote and Corey.

10. Corey did not transport the Shipment itself; rather, Corey brokered and tendered the Shipment to T&S for transport to Merrimack, New Hampshire.

11. While the Shipment was in transit and in the custody and control of T&S, the trailer containing the Shipment caught fire due to an issue with the brakes, at or near Exit 35 on Interstate 287 in Morristown, New Jersey.

12. The Shipment was damaged by the fire and was determined to be unsalvageable.

13. The fire also caused a chemical leak, which required Hazmat response and cleanup.

14. As a result of the fire, ancillary towing charges were also incurred.

15. Coyote paid for the loss of the Shipment, Hazmat Response and Cleanup expenses, and towing expenses, and filed the Underlying Lawsuit against Coyote and T&S to recover its payments.

16. In the Underlying Lawsuit, Coyote alleges that Corey violated the Carmack Amendment by failing to deliver the Shipment in good order and condition to the consignee.

3

17. Alternatively, Coyote alleges that Corey breached the indemnification provision contained in the Broker-Carrier Agreement between Coyote and Corey.

18. Coyote further alleges that T&S violated the Carmack Amendment by failing to deliver the Shipment in good order and condition to the consignee.

*The Subject Progressive Policy*

19. Corey is insured under a Commercial Auto Policy issued by Progressive, with a policy number of 07782169-2, and a policy period of June 19, 2020 to June 19, 2021 (the "Policy" or the "Progressive Policy"). The Policy contains a Motor Truck Cargo Legal Liability Coverage Endorsement, Form Z434, Edition 02/19 (the "Cargo Endorsement"). A true and correct certified copy of the Progressive Policy, including the Cargo Endorsement, is attached hereto as Exhibit A.

20. Progressive incorporates by reference the language of the Policy its entirety but additionally asserts that the Policy and Cargo Endorsement contain the following pertinent provisions:

**COMMERCIAL AUTO POLICY**

GENERAL DEFINITIONS

6. "Insured auto" or "your insured auto" means:
    a. Any auto specifically described on the declarations page; or
    b. An additional auto for Part I—Liability To Others and/or Part II—Damage To Your Auto on the date you become the owner if:
        (i) you acquire the auto during the policy period shown on the declarations page;
        (ii) we insure all autos owned by you that are used in your business;
        (iii) no other insurance policy provides coverage for that auto; and
        (iv) you tell us within 30 days after you acquire it that you want us to cover it for that coverage.

PART I—LIABILITY TO OTHERS

INSURING AGREEMENT—LIABILITY TO OTHERS

Subject to the Limits of Liability, if you pay the premium for liability coverage for the insured auto involved, we will pay damages, other than punitive or exemplary damages, for bodily injury, property damage, and covered pollution cost or expense for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of that insured auto . . . .

EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I—LIABILITY TO OTHERS.

Coverage under this Part I, including our duty to defend, does not apply to:

7. Care, Custody or Control
   Property damage to, towing or removal expense for, or covered pollution cost or expense involving, any property owned by, rented to, being transported by, used by, or in the care, custody or control of any insured, including any motor vehicle operated or being towed. But this exclusion does not apply to liability assumed under a sidetrack agreement.

## **MOTOR TRUCK CARGO LEGAL LIABILITY COVERAGE ENDORSEMENT**

INSURING AGREEMENT—LOSS TO COVERED PROPERTY

Subject to the Limit of Liability, if you pay the premium for this Motor Truck Cargo Legal Liability Coverage, we will pay for the direct physical loss to covered property that you are legally liable to pay as a trucker under a written: bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage. For this coverage to apply, the covered property must, at the time of loss, be in your exclusive physical custody and control:
1. while in due course of transit in, on, or attached to an insured auto; or
2. during loading or unloading.
Coverage applies for loss to covered property only if the loss is caused by a covered peril. For covered property that is your property, our payment is not contingent upon your liability.
. . . .

ADDITIONAL DEFINITIONS

2. "Covered peril" means any external risks of direct physical loss to covered property or business equipment, except for those listed in a. through m. below as Excluded Perils.

   Excluded Perils: Please read the following list of excluded perils carefully. Coverage will not be afforded under this Motor Truck Cargo Legal Liability

5

Coverage endorsement for these types of perils. We will not pay for any losses to covered property or business equipment caused by, resulting in or from, or arising out of these excluded perils regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    f.  Consequential Loss
Loss of use, loss of market, loss of market value, or delay; or any other remote or consequential loss, other than direct physical loss, to covered property or business equipment.

3. "Covered property" means lawful goods and merchandise of others, except for the items listed in a. through j. below as Excluded Properties. Covered property includes goods and merchandise owned by you while loaded for shipment in or on an insured auto, whether or not shipped under a bill of lading or shipping receipt. When used in this endorsement, goods and merchandise means products destined for market and/or sale. Covered property does not include any equipment you own that is being transported between work sites. Covered property also does not include autos you lease, hire, rent, or borrow.

   Excluded Properties: Please read the following list of excluded properties carefully. Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for loss to these types of properties.

       d.  Other Carrier
   Any property while in the physical custody of any other carrier.

5. "In due course of transit" means being shipped from the time you assume exclusive physical custody and control of the covered property for the purpose of the actual movement of covered property from the point of shipment bound for a specific destination and ending when one of the following first occurs:
   a. the covered property is accepted by, or on behalf of, the consignee at the intended destination;
   b. the covered property is accepted by, or on behalf of, the consignee at any intermediate point short of reaching the original intended destination;
   c. 72 hours after arrival at destination; or
   d. any other stop that exceeds 72 hours.
   In due course of transit includes ordinary and necessary stops, interruptions, delays, or transfers incidental to the route and method of shipment.

6. "Insured auto" means:
   a. Any auto specifically described on the declarations page that is not a trailer;
   b. An additional auto that is not a trailer on the date you become the owner if:
      (i) you acquire the auto during the policy period shown on the declarations page;

6

      (ii) we insure all autos owned by you that are used in your business;
      (iii) no other insurance policy provides coverage for that auto; and
      (iv) you tell us within 30 days after you acquire it that you want us to cover it;
   c. Any replacement auto that is not a trailer on the date you become the owner if:
      (i) you acquire the auto during the policy period shown on the declarations page;
      (ii) the auto that you acquire replaces one specifically described on the declarations page due to termination of your ownership of the replaced auto or due to mechanical breakdown of, deterioration of, or loss to the replaced auto that renders it permanently inoperable;
      (iii) no other insurance policy provides coverage for that auto; and
      (iv) you tell us within 30 days after you acquire it that you want us to cover it;
   d. A trailer designed primarily for travel on public roads, only when the trailer is attached to a power unit that is an insured auto or while it is in due course of transit by a power unit that is an insured auto; and
   e. Any temporary substitute auto that is not a trailer.

21. Coyote submitted a claim arising out of the trailer fire and Shipment loss to Progressive under the Progressive Policy on March 3, 2021.

22. After reviewing the facts of the alleged loss and the terms of the Progressive Policy, Progressive issued a reservation of rights letter dated March 18, 2021, informing Corey that it would continue to investigate the matter subject to a full reservation of its rights under the Progressive Policy.

23. After conducting a thorough investigation, Progressive issued a letter dated April 6, 2021, informing Coyote that there is no coverage for Coyote's claim under the Progressive Policy.

24. After conducting a thorough investigation, Progressive issued a letter dated April 9, 2021, informing Corey that there is no coverage for Coyote's claim under the Progressive Policy.

25. Coyote commenced the Underlying Lawsuit against Corey and T&S on January 24, 2022 in the U.S. District Court for the Northern District of Illinois.

26. In the Underlying Lawsuit, Coyote claims damages against Corey and T&S in the amount of $272,055.33 for the loss of the Shipment, Hazmat response and cleanup expenses, and towing expenses.

27. Progressive has retained merits counsel to defend the Underlying Lawsuit against Corey under a reservation of rights.

## COUNT I: DECLARATORY JUDGMENT

28. Progressive incorporates by reference and realleges the preceding paragraphs of this Complaint as if fully set forth herein at length.

29. An actual, present, and existing controversy exists between Progressive, Corey, Coyote, and T&S regarding the existence of coverage under the Progressive Policy in connection with the claims presented in the Underlying Lawsuit, which merits a determination of the rights of the parties by this Court pursuant to the Declaratory Judgment Act.

30. The Progressive Policy does not require Progressive to defend or indemnify Corey for the liability and damages it may incur to Coyote or to any other party in the Underlying Lawsuit for one or more of the following reasons:

   a. The damages alleged in the Underlying Lawsuit are not for bodily injury, property damage, or covered pollution cost or expense for which Corey may become legally responsible because of an accident arising out of the ownership, maintenance or use of an insured auto within the meaning of the Insuring Agreement and the Policy and Cargo Endorsement Definitions of "Insured auto."

   b. Even if the Shipment was being transported by Corey or was in Corey's care, custody, or control at the time of the fire (it was not), the Care, Custody or Control Exclusion to the Policy would apply to preclude coverage because the damages alleged in the Underlying Lawsuit would constitute property damage to, towing or removal expense for, or pollution cost or expense involving, property owned by, rented to, being transported by, used by, or in the care, custody or control of an insured.

   c. There was no direct physical loss to "covered property" within the meaning of the Cargo Endorsement's Insuring Agreement and Definition of this term.

8

  d.  The Shipment was in the physical custody of T&S or another carrier at the time of the Fire, precluding coverage under the Cargo Endorsement and Definition of "covered property," which expressly excludes any property while in the physical custody of any other carrier.

  e.  Even if there were direct physical loss to "covered property" within the meaning of the Cargo Endorsement's Insuring Agreement and Definition of this term, coverage would not be triggered because the damaged property was not, at the time of loss, in Corey's exclusive physical custody and control: 1. while in due course of transit in, on, or attached to an insured auto; or 2. during loading or unloading" within the meaning of the Cargo Endorsement's Insuring Agreement and the applicable Definitions.

  f.  The Cargo Endorsement does not provide coverage for this alleged loss because the loss in question was not caused by a "covered peril" within the meaning of the Cargo Endorsement and Definition of this term.

  g.  Some or all of the damages alleged in the Underlying Lawsuit constitute "consequential loss," coverage for which is expressly excluded under the Cargo Endorsement's Definition of "Covered peril."

31. Progressive seeks a declaration that the Progressive Policy and Cargo Endorsement do not give rise to any defense obligations on Progressive's part with respect to the Underlying Lawsuit or any damages alleged therein.

WHEREFORE, Plaintiff, Progressive Northern Insurance Company, respectfully requests this Court enter a Declaratory Judgment as follows against Corey, Coyote, T&S, and any and all other parties to the Underlying Lawsuit who seek recovery under the Progressive Policy identified above or who otherwise contend that said policy provides coverage for liability and damages that Corey may incur to any party in the Underlying Lawsuit:

  A)  That Progressive has no obligation to defend Corey in the Underlying Lawsuit;

  B)  That Progressive has no obligation to pay any sums of money for which Corey may be held liable to the Plaintiff or to any other parties in the Underlying Lawsuit;

  C)  That the Progressive Policy identified in this Complaint for Declaratory Judgment does not provide coverage to any person, party, or entity for any of the liability or damages asserted or proven in the Underlying Lawsuit;

  D)  That Progressive is entitled to all costs and attorney's fees allowed by law; and

  E)  For such other and further relief allowed in law and equity that the Court deems just and equitable.

            Respectfully submitted,

Dated: June 8, 2022      */s/ Michael A. Snider*
             One of Plaintiff's Attorneys

Michael A. Snider (ARDC #6337269)
McCOY LEAVITT LASKEY LLC
N19W24200 Riverwood Drive, Suite 125
Waukesha, WI 53188
Telephone (262) 522-7000
Facsimile (262) 522-7020
Msnider@MLLlaw.com
Firm No. 56367